NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAWN McDONOUGH, : | |
|     Plaintiff, : | |
| : | |
| v. : | Civil Action No. 05-cv-00135 (JHR) |
| : | |
| JOHN B. COOKSEY, Sheriff, : | **OPINION** and **ORDER** |
| in his official and individual : | |
| capacities, and SALEM : | |
| COUNTY BOARD OF : | |
| CHOSEN FREEHOLDERS : | |
|     Defendants. : | |

RODRIGUEZ, Senior District Judge:

This matter comes before the Court on Plaintiff's and Defendants' cross-motions for summary judgment pursuant to Rule 56. For the reasons stated herein, Plaintiff's motion for summary judgment is denied and Defendants' motion for summary judgment is granted in part and denied in part.

### I. Factual and Legal Background

Plaintiff Dawn McDonough ("Plaintiff") was a Salem County Sheriff's Officer. She alleges violations of Title VII[1] and New Jersey's Law Against Discrimination ("LAD").

---

[1] Plaintiff alleges a violation of the Fourteenth Amendment through 42 U.S.C. § 1983, and not violations of Title VII, apparently on the belief that violations of Title VII, the Fourteenth Amendment, and the New Jersey Law Against Discrimination are all subject to the same standard of review. See Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990); Lehmann v. Toys 'R' Us, Inc., 626 A.2d 445, 454 (N.J. 1993). Because both parties' briefs treat the federal claims as violations of Title VII, the Court will review the claims in the complaint as if they were alleged under Title VII.

Specifically, she alleges gender discrimination, retaliation, and constructive discharge under both federal and state law.  She contends that she was denied a K9 Officer position 1) because of sexual discrimination and 2) in retaliation for her "successful litigation" against the department for sexual harassment.  (Compl. at ¶¶ 7-8.)  She also alleges that she was constructively discharged.  (Id. at ¶ 9.)

This is Plaintiff's second gender-discrimination related suit against Defendants.  (See id. at ¶ 8; see also Defs.' Br. in Supp. of Mot. for Summ. J., Ex. G., Compl., LeVesque v. Cooksey, No. 00-cv-3432; id., Ex. H, Release & Settlement Agreement, LeVesque v. Cooksey (hereinafter "Settlement Agreement").)  The first suit was settled on March 10, 2003.  (See Settlement Agreement.)  In late 2003, Plaintiff learned that the Salem County Sheriff's Department would be receiving a K9.  (Compl. at ¶¶ 12-13; Defs.' Br. in Supp. of Mot. for Summ. J., Ex. B, Dep. of Dawn McDonough at 33:5-25 (hereinafter "McDonough Dep."); Pls.' Mem. in Opp'n to Defs.' Mot. for Summ. J., Ex. 11, McDonough Letter to Cooksey dated Dec. 15, 2003.)  At that time she learned that Officer Robert Hans had been selected for the K9 officer position.  (Compl. at ¶¶ 12-13.)  Plaintiff alleges she was "most qualified" for the job and certainly more qualified for the position than the officer selected, and further alleged that department superiors hand-selected the officer without announcing the position.  (Id. at ¶¶ 10-15, 18-24.).  She stresses that she informed her superiors of her interest in the position on many occasions, and became the subject of jokes.  (Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. at 4 (hereinafter "Pl.'s Opp'n to Summ. J.").)

Defendants contend that Plaintiff was not chosen because she did not have a good attendance or overtime record, important requirements for the position.  (See Defs.' Br. in Supp. of Mot. for Summ. J. at 4 (hereinafter "Defs.' Mot. for Summ. J."); see also id., Ex. K, Sick Time

Reprimand of McDonough.)  All members of the department were considered. The officer selected was determined best for the position. A male officer with prior police dog experience was not selected.  (Id. at 4-5.)  Defendants also passed over other male officers who expressed interest in the position.  (Id. at 9.)  Additionally, Plaintiff acknowledges the Sheriff's Department hired a female K9 officer, in the past, to work in the county jail,  (See McDonough Dep. at 44:8-18.), and that the position appears to fall outside the civil service and collective bargaining agreements.  (Defs.' Reply Br. at 2.)  The K9 officer position is considered an assignment within the department, and not a promotion.  (Defs.' Mot. for Summ. J. at 8; Pl.'s Opp'n to Summ. J. at 8.)  Defendants do not appear to dispute that Plaintiff has experience breeding and handling dogs. (E.g., McDonough Dep. at 40:21-43:10.)

      Plaintiff also alleges that she was rejected for "past jobs and opportunities" in favor of "'junior men'", was not told of intra-department opportunities, experienced continuous discrimination within the department, and "had to get out" of the department when she was not selected for the K9 position.  (Pl.'s Opp'n to Mot. for Summ. J. at 11.)  Additionally, there were few women in the department.  (See, e.g., McDonough Dep. at 50:2-11 (noting three female sheriff's officers, including Plaintiff in 2003-2004).)  Defendants counter that the opportunities missed were either the result of her failures, her leaving before they became available, the opportunities were not available to any of the department's officers, and the opportunities were publicized by the officers' union and not the department.  (Defs.' Mot. for Summ. J. at 7-8.) Additionally, Defendants insist that they actually gave Plaintiff the opportunity to participate in special assignments.  (Id.)

      When asked to explain the unfairness Plaintiff experienced in the sheriff's department,

she answered, "Everything was unfair." (McDonough Dep. at 35:16.) She can, however, point to incidents following her settlement of the previous lawsuit against Defendants. (Id. at 61:4-65:11.) She specifically points to comments and name calling by county employee Debbie Kulpa, concerning the previous suit. (Id. at 61:4-62:11, 63:25-64:9.) Also, she alleges Sgt. Bill Holmes physically intimidated her by bumping her, and giving her less desirable assignments. (Id. at 62:15-22, 63:8-13.) The complaints were brought to the attention of Sgt. Holmes and the sheriff. (Id. at 62:23-63:23.)

Plaintiff resigned from the sheriff's department on October 1, 2004. (Defs.' Mot. for Summ. J., Ex. E, McDounough Letter to Cooksey dated Sept. 20, 2004). She currently works as a park ranger for the New Jersey State Park Service. (McDonough Dep. at 4:13). She applied for the position in early 2004 and started work in October 2004. (Id. at 4:25-5:7.) She received a lateral transfer from the sheriff's department to the park ranger position in April 2004. The sheriff approved the transfer. (Id. at 7:17-23, 8:17-25.) Initially, Plaintiff received less pay as a park ranger, but now earns a comparable salary. (Id. at 9:1-18.) Plaintiff currently works with a rescue dog. (Id. at 47:25-48:10.)

As a result of Defendant's alleged actions, Plaintiff claims she suffered emotional and psychological damages and sold her breeding dogs for below their value. (Pls.' Opp'n to Summ. J. at 11; Compl at ¶ 41.)

## II. Discussion

Plaintiff has filed federal and state law claims alleging gender discrimination, retaliation, and constructive discharge. Both sides have filed for summary judgment. For the reasons stated below, Plaintiff's motion for summary judgment will be denied. Also, Defendants' motion for

4

summary judgment on the discrimination and retaliation claims will be denied. Defendants' motion on the constructive discharge claim will be granted.

**A.      Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general

denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.     Federal Claims**

   **1.     Gender Discrimination**

When evaluating a discrimination claim, the Court engages in a three-step process: 1) whether the plaintiff establishes a prima facie discrimination case; 2) if so, the burden of production, not persuasion, shifts to the defendant to show a non-discriminatory reason for the decision; 3) and if the defendant meets this requirement, the plaintiff must show by a preponderance of the evidence that the non-discriminatory reason was pretext for discrimination. Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Tex. Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)).

There is a low bar for establishing a prima facie case of employment discrimination based on gender. Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 (3d Cir. 2006). To establish a prima facie case, a plaintiff must show 1) she is a member of a protected class; 2) she was qualified for the position she sought; and 3) that this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently. Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318-19 (3d Cir. 2000); Jones, 198 F.3d at 410. Evidence of differential treatment of a single member of a non-protected class is "insufficient to give rise to an inference of discrimination." Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 359 (3d Cir. 1999) (citing Simpson v. Kay Jewelers, 142 F.3d 639, 646 (3d Cir. 1998)). But see Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999) ("[A]n employer will almost never

announce a discriminatory animus or provide employees or courts with direct evidence of discriminatory intent."). Here, the Court will accept that Plaintiff was a member of a protected class and qualified for the position of K9 officer.

To establish an adverse employment action, a plaintiff must show a job action "serious and tangible enough to alter an employee's compensation, terms, conditions or privileges of employment." Cardenas v. Massey, 120 F.3d 251, 263 (3d Cir. 2001) (internal quotation marks and citation omitted). That is because Title VII prohibits action that "deprive[s] or tend[s] to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee." 42. U.S.C. § 2000e-2(a) (2006). A tangible adverse employment action creates a "significant change in employment status, such as a hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." Weston v. Pennsylvania, 251 F.3d 420, 430-31 (3d Cir. 2001) (internal quotation marks omitted) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 749 (1998)). It need not entail a change in pay or job title to be adverse, though. Seldon v. Nat'l R.R. Passenger Corp., 452 F. Supp. 2d 604, 609 (E.D. Pa. 2006) (citing Torre v. Casio, Inc., 42 F.3d 825, 827 n.7 (3d Cir. 1994)). In that vein, failure to transfer an employee to a desired position can be an adverse employment decision. See Jones, 198 F.3d at 412; Seldon, 452 F. Supp. 2d at 609 (citing Amro v. Boeing Co., 232 F.3d 790. 797 (10th Cir. 2000)). The defendant's assignment of an employee to a position can raise Title VII liability. Scheidemantle, 470 F.3d at 540 n.6.

Plaintiff, here, alleges just enough to make a prima facie case of discrimination. Defendants denied Plaintiff an assignment as K9 officer, which she declared was a position of prestige. Under both Jones and Seldon, the denial of a desired position can be an adverse

7

employment decision. The fact that one officer, not in a protected class, is treated differently from another in a protected class does not amount to discrimination under Pivirotto. There are allegations here, however, that Plaintiff was treated differently from all of the other male officers. As a result, the burden of production shifts to Defendants to establish a non-discriminatory explanation for the adverse employment decision. McDonnell Douglas, 411 U.S. at 803.

The defendant has to show that there is "a genuine issue of material fact as to whether it discriminated against the plaintiff," not "persuade the court that it was actually motivated by the proffered reasons." Iadimarco, 190 F.3d at 157 (internal quotation marks omitted) (quoting Burdine, 450 U.S. at 254). The defendant's burden is "relatively light." Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006) (quoting Fuentes v. Perski, 32 F.3d 759, 763 (3d Cir. 1994)).

Defendants contend that they considered all the officers in the sheriff's department before hiring a male officer for the K9 officer position. Defendants state that they passed over a male officer who had experience handling a police dog, as well as Plaintiff, who had experience breeding and handling dogs. Additionally, Defendants point to Plaintiff's lack of overtime and her abuse of sick time as additional reasons for their decision. As a result, they raise an issue of fact.

The plaintiff can rebut by showing that the defendant's proffered legitimate decision is actually a pretext for discrimination by proof of background factors such as general policy and hiring statistics. See McDonnell Douglas, 411 U.S. at 804-05. The plaintiff must show "some evidence" that would enable a fact finder to reasonably 1) "disbelieve the employer's articulated legitimate reasons" or 2) "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Iadimarco, 190 F.3d at 166

(internal quotation marks omitted and emphasis added by the court) (quoting Fuentes, 32 F.3d at 764).  The plaintiff can survive summary judgment without presenting more evidence than it used to establish its prima facie case if that evidence discredits the defendant's proffered non-discriminatory explanation.  Id. (quoting Fuentes, 32 F.3d at 764).  Plaintiff cannot survive summary judgment, however, by arguing that the factfinder does not have to believe the defendant.  Fuentes, 32 F.3d at 764.  But the plaintiff also does not have to produce evidence that directly contradicts the defendant's reason.  Id.  The plaintiff must present evidence that rebuts each of the defendant's reasons, unless the reasons the plaintiff offers substantially undermine the defendant's reasons so that the defendant's credibility is impeded to the point where the factfinder need not consider the other reasons.  Id. at 764, 764 n.7.  It is not enough for the plaintiff to show that the defendant was "wrong or mistaken," but must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could rationally find them unworthy of credence."  Id. at 765 (internal quotation marks and citations omitted and emphasis in original).  Additionally, the plaintiff's opinion that the person selected for the position was not qualified does not alone rebut the defendant's proffered explanation.  Cutrona v. Int'l Flavors & Fragrances, No. 03-1886, 2006 WL 1877134 (D.N.J. July 6, 2006).

  Plaintiff argues that gender and not the other officer's qualification, was the reason why Defendants did not select her as K9 officer, because she is more qualified than the officer assigned to the position.  Under Fuentes and Cutrona, this argument potentially shows Defendant was wrong or mistaken, not biased.  Plaintiff's opinion that she was the most qualified officer, while dubious on its face, is not enough to show gender discrimination even if true.

9

Nevertheless, Plaintiff successfully challenges Defendants' non-discriminatory reason for hiring a male officer. Defendants hired few female officers, passed over Plaintiff and other female officers for desirable assignments and training, and generally treated Plaintiff differently from male officers. A factfinder could reasonably conclude, given these circumstances, that Defendants' explanation, that the other officer was more qualified, was pretext for gender discrimination. Allegations that women were treated differently from men undermines Defendants' arguments that no such gender discrimination occurred here. Because there are questions of fact, both Plaintiff's and Defendants' motions for summary judgment will be denied.

### 2. Retaliation

To establish a prima facie case of retaliation, a plaintiff must show 1) engagement in a protected activity; 2) occurrence of an adverse employment action; and 3) the existence of a causal connection between participation in the protected activity and the adverse employment action. EEOC v. L.B. Foster Co., 123 F.3d 746, 754 (3d Cir. 1997) (citing Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173 (3d Cir. 1997)). Filing a Title VII lawsuit is a protected activity. See Burlington N. & Santa Fe Ry. Co. v. White, _ U.S. _, 126 S. Ct. 2405, 2408 (2006) (quoting 42 U.S.C. § 2000e-3(a)). For purposes for retaliation, an adverse employment action includes an action that would be so harmful to the reasonable employee that she would be dissuaded from "making or supporting a charge of discrimination." Id. at 2409. This standard differs from the anti-discrimination provision's definition of an adverse employment action. See id. at 2411-13 ("[T]he anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."). The job action must be materially adverse–not a minor annoyance–and cause harm, so that it would deter

victims from making Title VII claims. Id. at 2415-15. The reasonable woman standard captures slights that would be immaterial in some situations, but actionable in others when placed in context. Id. at 2415-16 (citations omitted). The Court in White rejected the previous standard in the Third Circuit for determining an adverse employment action under Title VII's anti-retaliation section. See id. at 2410; Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006) (noting the difference between the White standard and the Third Circuit's standard); Seldon, 452 F. Supp. 2d at 609 (same). Plaintiff has established she engaged in a protected activity when she filed her original gender discrimination suit. A jury could reasonably find that Defendants' failure to assign Plaintiff to the K9 handler position could deter other employees from filing Title VII claims. The jury could believe that the decision not to assign Plaintiff to the K9 officer position was a materially adverse employment action that could discourage other employee from filing Title VII actions.

In addition to the protected activity and the adverse employment decision, Plaintiff must show that the action caused the adverse decision. Timing alone does not establish causation. Weston, 251 F.3d at 431. Nevertheless, when the timing is considered with a pattern of "antagonism," a plaintiff can establish causation. Id. at 432; see also Hargrave v. County of Atlantic, 262 F. Supp. 2d 393, 424 (D.N.J. 2003) ("[T]he temporal proximity between an employer's action and an employee's protected activity may permit an inference of causation where the relatively short interval between the two is unusually suggestive of retaliation." (internal quotation marks and citations omitted)).

Here, Plaintiff applied for the K9 officer position in December 2003 after settling her case with the Defendants in March 2003. The approximately nine-month difference when combined

with accusations of harassment and intimidation could lead a reasonable jury to conclude that Defendants did not select Plaintiff for the position because she previously sued them. Therefore, there is a question of fact for the jury and Defendants' motion for summary judgment will be denied.

### 3. Constructive Discharge

Before a plaintiff can establish constructive discharge, she must first show such severe and pervasive harassment that the conditions of employment are altered. Pa. State Police v. Suders, 542 U.S. 129, 133 (2004). After making such a showing, the plaintiff must then show that "the abusive working environment became so intolerable that her resignation qualified as a fitting response." Id. at 134; see also Cardenas, 120 F.3d at 263 (A plaintiff establishes constructive discharge when she shows an employer "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." (internal quotation marks and citation omitted)). Included in this is a "continuous pattern" of discrimination over years. Cardenas, 120 F.3d at 263-64. The standard for constructive discharge is an intolerable working condition, which is higher than the standard for alteration of conditions of employment under the anti-discrimination section of Title VII. Suders, 542 U.S. at 146-47.

The defendant can rebut a claim by showing both 1) there was a "readily accessible and effective policy for reporting and resolving complaints of sexual harassment"; and 2) the plaintiff's failure to avail herself of those procedures was unreasonable. Id. at 134. This defense is not available where "the plaintiff quits in reasonable response" to an adverse status change or situation where there is, for example, "a humiliating demotion, extreme cut in pay, or transfer to

a position in which she would face unbearable working conditions." Id.

Under the circumstances here, Plaintiff's claim of constructive discharge will be dismissed because she does not establish the higher threshold of an intolerable working condition established in Suders. Even though she may be able to raise a question of fact for the jury as to whether gender discrimination and/or retaliation for filing an earlier lawsuit kept her from getting the assignment she desired, that alone does not reach the level required by the Court in Suders. She left the sheriff's department approximately ten months after being passed over for the K9 officer position. This does not show an intolerable working environment. In addition, Plaintiff's admission that, soon after learning she would not be selected, she applied for her current job as a park ranger. It appears that she left to pursue a job, she admitted in her deposition, she always wanted and not because of the intolerable conditions. For these reasons, Defendants' motion for summary judgment will be granted on the constructive discharge claim.

**C.     New Jersey Law Against Discrimination Claims**[2]

   **1.     Discrimination**

For a plaintiff to state a claim for hostile work environment due to sexual harassment, she "must allege conduct that occurred because of her sex and that a reasonable woman would consider sufficiently severe or pervasive to alter the conditions of employment and create an intimidating, hostile, or offensive working environment." Lehmann v. Toys 'R' Us, Inc., 626 A.2d 445, 453 (N.J. 1993). She can do this by passing a four-prong test: the conduct 1) "would

---

[2] A plaintiff meeting Title VII's standard for sexual harassment will meet the LAD test. Hargrave v. County of Atlantic, 262 F. Supp. 2d 393, 411 n.7 (D.N.J. 2003) (citations omitted). Additionally, New Jersey courts apply the McDonnell Douglas framework to evaluating LAD claims. Cutrona v. Int'l Flavors & Fragrances, No. 08-1886, 2006 WL 1877134 (D.N.J. July 6, 2006) (citing Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 83 (1978)).

not have occurred but for the employee's gender; and it was 2) severe or pervasive enough to make a 3) reasonable woman believe that 4) the conditions of employment are altered and the working environment is hostile or abusive." Id. (emphasis in original). Prongs two, three and four are "interdependent." Id. The Lehmann Court explained that the complained of "conduct must be severe or pervasive enough to make a reasonable woman believe that the conditions of employment are altered and her working environment is hostile." Id. at 453-54.

The discrimination prong of the test stands apart from the last three parts of the hostile workplace test. Id. A defendant does not violate the LAD if the complained of conduct "would have occurred regardless of the plaintiff's sex." Id. If the conduct is not sexual in nature, then the plaintiff must make a prima facie showing that her gender was the reason for the harassment. Woods-Pirozzi v. Nabisco Foods, 675 A.2d 684, 691 (N.J. Super. Ct. App. Div 1996). Non-sexual conduct that accompanies sex-related conduct establishes prima facie discrimination. Id. at 692-93. Discrimination is conduct "intended to interfere" with the plaintiff's job performance or that created an "intimidating, hostile or offensive work environment." Muench v. Twp. of Haddon, 605 A.2d 242, 246 (N.J. Super. Ct. App. Div. 1992) (citing Meritor Sav. Bk. F.S.B. v. Vinson, 477 U.S. 57, 65 (1986)). A plaintiff making out a discrimination claim does not need to show fault or intent to discriminate or harass, because the LAD sought the end of intentional and unintentional discrimination. Lehmann, 626 A.2d at 454. If the plaintiff shows the defendant's conduct was "more likely than not" based on gender, then she creates a rebuttable presumption that the defendant harassed her based on gender. Id. It is not enough for the plaintiff to state subjective feelings of discrimination; she must tie her claims to specific incidents of gender discrimination. Herman v. Coastal Corp., 791 A.2d 238, 248 (N.J. Super. Ct. App. Div. 2002).

The LAD is not a guideline for workplace civility, and offensive comments or jokes are not enough to state a claim for discrimination. Id. at 249-50.

Plaintiff alleges that gender discrimination was the reason she was not assigned the K9 officer position. While it is true that Defendants argue they based the decision on skill and not gender, Plaintiff has created a question of fact for a jury whether it is more likely than not that gender was the reason for Defendants' decision. It is inconsequential under Lehmann whether this discrimination was intentional or inadvertent. What does matter is that Plaintiff may be able to make a showing at trial that Defendants' treatment of her was based on her gender and not her abilities. She can do this in part by pointing to the lack of female officers and the lack of opportunities for training and advancement. For that reason, Plaintiff passes the first prong of Lehmann.

A plaintiff that makes out the first part of the Lehmann test, must then show that the complained of conduct was "severe or pervasive," not that the "effect on the plaintiff or on the work environment" was severe or pervasive. Lehmann, 626 A.2d at 454 (internal citation and quotation marks omitted). The LAD does not require regular and pervasive conduct, because a single incident may create a hostile environment because of its severity. Id. at 455. A supervisor that behaves in a cold, uncivil, inhospitable, or even boorish way dos not engage in harassment that is severe and pervasive. Shepherd v. Hunterdon Dev. Ctr., 803 A.2d 611, 626 (N.J. 2002). Frequent comments and threats, however, taken together create a cumulative effect of a hostile work environment. Id.; Lehmann, 626 A.2d at 455; Woods-Pirozzi, 675 A.2d at 692-93.

Next is the "level of harm" done to the plaintiff, which does not rely merely on psychological damage. Lehmann, 626 A.2d at 455-56. Factors like economic damage and

physical conditions are taken into account.  Id. at 456.  The severe and pervasive test looks at the conduct not the effect.  Id. at 456-57.  The threshold the plaintiff must reach to show harm is "her working conditions were so affected by the harassment to the point at which a reasonable woman would consider the working environment hostile."  Id. at 457.  A plaintiff can use the harassment of other women in the office to make out this claim.  Id.

Whether severe or pervasive harassment altered the working condition and created a hostile or intimidating workplace is considered from the point of view of a "reasonable woman." Id. at 457-58.  The reasonable woman standard is an objective question to weed out complaints by "hypersensitive" plaintiffs.  Id. at 458; Muench, 605 A.2d at 249.  Humiliation or loss of self-esteem are considerations when measuring whether the plaintiff reacted as a reasonable woman would.  Muench, 605 A.2d at 249.  This standard is specific to women, as sexual harassment claims by men are evaluated under a reasonable man standard.  See Lehmann, 626 A.2d at 459 (noting that "to fairly evaluate" sexual harassment claims, court must recognize the difference between "male and female perspectives").

Plaintiff states a claim for severe or pervasive gender discrimination because a reasonable factfinder could believe gender was the reason she was not selected. As stated earlier, Defendants hired few female officers, there are allegations women were given less desirable assignments, and women were denied opportunities for training and advancement within the sheriff's department.  Denying Plaintiff opportunity for advancement based on her gender is severe and pervasive and could cause a reasonable woman–and not just a hypersensitive woman–to believe the working environment was hostile.  Additionally, Plaintiff alleges she suffered humiliation and psychological and emotional injuries as required under Lehmann and Muench.  Because

16

Plaintiff's claim creates a question of fact for the jury, Plaintiff's and Defendants' motions for summary judgment will be denied.

### 2. Retaliation

Plaintiff also claims that Defendants retaliated against her for previously suing them for sexual discrimination. Because the test for retaliation under the LAD mirrors the test under Title VII, Defendants' motion for summary judgment will be denied for the reasons stated supra Part II.B.2.

### 3. Constructive Discharge

Finally, Plaintiff claims that because of Defendants' behavior she was constructively discharged. Constructive discharge requires more facts and worse conduct than a discrimination complaint in order to state a claim under the LAD. Shepherd, 803 A.2d at 628. It is not enough that the defendant's conduct is severe or pervasive; it must be "so intolerable that a reasonable person would be forced to resign rather than continue to endure it." Id. Intolerable conduct includes conduct that is "outrageous, coercive and unconscionable." Id. (quotation marks and citation omitted). Such conduct includes an employer forcing an employee to choose "demotion, termination or resignation" without justification. Muench, 605 A.2d at 249. To state a claim for constructive discharge, a plaintiff cannot first quit her job; instead, she "has an obligation to do what is necessary and reasonable in order to remain employed rather than simply quit." Woods-Pirozzi, 675 A.2d at 696. This is a fact-intensive inquiry, Muench, 605 A.2d at 249, that considers the type of the sexual harassment, how close the working relationship is between the plaintiff and defendant, whether the plaintiff has used the defendant's internal grievance procedure, how the defendant responded to the plaintiff's complaints, and "all other relevant

circumstances," Woods-Pirozzi, 675 A.2d at 696 (citation omitted).  Plans to leave a job militate against a finding of constructive discharge.  Shepherd, 803 A.2d at 628.

Nothing Plaintiff endured could be considered outrageous.  While it may meet the standard for gender discrimination, it does not rise to the level of constructive discharge, as stated supra Part II.B.3.  Additionally, when combined with the other factors, Plaintiff's application for a new job, and actually leaving for a new job, roughly ten months after being denied the K9 handler position preclude a reasonable jury finding for Plaintiff on the constructive discharge claim.  Therefore, Defendants' motion for summary judgment will be granted.

### III. Conclusion

For the reasons set forth above, Plaintiff's motion for summary judgment will be denied, and Defendants' motion for summary judgment will be granted on both the federal and state constructive discharge claims, but will be denied on both the federal and state gender discrimination and retaliation claims.


Date: May 15, 2007                               /S/ Joseph H. Rodriguez
                                                 JOSEPH H. RODRIGUEZ
                                                 United States District Judge